Roderick G. Dorman (SBN 96908)
rdorman@mckoolsmith.com
MCKOOL SMITH P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:(213) 694-1200

Douglas A. Cawley (TX SBN 04035500) (Pro Hac Vice to be Filed)
dcawley@mckoolsmith.com
Richard A. Kamprath (TX SBN 24078767) (Pro Hac Vice to be Filed)
rkamprath@mckoolsmith.com
MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:(214) 978-4000

Joshua W. Budwin (TX SBN 24050347) (Pro Hac Vice to be Filed)
jbudwin@mckoolsmith.com
John B. Campbell (TX SBN 24036314) (Pro Hac Vice to be Filed)
jcampbell@mckoolsmith.com
Kristina S. Baehr (TX SBN 24080780 (Pro Hac Vice to be Filed)
kbaehr@mckoolsmith.com
MCKOOL SMITH P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:(512) 692-8700

Attorneys for Plaintiff
ROVI GUIDES, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROVI GUIDES, INC.,<br>     Plaintiff,<br>  v.<br><br>COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC; COMCAST BUSINESS COMMUNICATIONS, LLC; COMCAST HOLDINGS CORPORATION; COMCAST SHARED SERVICES, LLC; COMCAST OF SANTA MARIA, LLC; and COMCAST OF LOMPOC, LLC,<br>     Defendants. | Case No.<br><br>Judge:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

MCKOOL SMITH, P.C.

McKool Smith, P.C.

Plaintiff Rovi Guides, Inc. (Rovi) brings this Complaint for patent infringement against Comcast Corporation; Comcast Cable Communications, LLC; Comcast Cable Communications Management, LLC; Comcast Business Communications, LLC; Comcast Holdings Corporation; Comcast Shared Services, LLC; Comcast of Santa Maria, LLC; Comcast of Lompoc, LLC (collectively, Comcast or Defendants) for infringement of U.S. Patent Nos. 8,001,564 (the '564 Patent); 7,779,445 (the '445 Patent); 7,386,871 (the '871 Patent); 8,156,528 (the '528 Patent); and 7,301,900 (the '900 Patent); 7,200,855 (the '855 Patent) (collectively, the Asserted Patents). Rovi, on personal knowledge as to its own acts, and upon information and belief as to all others based on investigation, alleges as follows:

## SUMMARY OF THE ACTION

1. For over a decade, Comcast built its interactive cable video business on the back of Rovi's patented technology. Specifically, in 2004, when Rovi's U.S. patent portfolio was less than half the size it is today, Comcast paid Rovi over $250 million for a fixed-term license to Rovi's patent portfolio (the License) to use Rovi's technology in connection with Comcast's Pay-TV systems. Comcast was not alone in recognizing the validity and value of Rovi's patents—every other major Pay-TV provider in the U.S. licensed Rovi's patents on similar terms.

2. The License expired on March 31, 2016. Yet when Comcast's major Pay-TV competitors—including AT&T, Charter, DISH, and Verizon—faced similar license expirations, Comcast's competitors renewed their licenses with Rovi, re-affirming the value of Rovi's patents. As part of Rovi's negotiations with Comcast, Rovi offered to renew the License on terms similar to what Rovi offered these competitors. Rovi also provided Comcast notice of infringement of many patents, including at least one of the Asserted Patents. Rovi explained that, without renewing the License, Comcast would no longer have permission to use Rovi's patents.

3.     Comcast rejected Rovi's offer. Instead, Comcast chose to try to have its cake and eat it too. Despite not being licensed since March 31, 2016, for millions of subscribers, Comcast has continued to make, use, sell, offer for sale, import, lease, offer to lease, and distribute products that practice Rovi's patents *and* compete with Rovi's own products. So, while every one of Comcast's competitors has paid a fair price for Rovi's innovative technology, Comcast alone continues to use it for free.

4.     Because of Comcast's willful infringement of Rovi's patents, Rovi sued Comcast in district court and in the International Trade Commission (ITC) for patent infringement of certain patents not asserted in this case.

5.     In November 2017, in the first ITC case, the ITC issued orders in Rovi's favor that barred Comcast from importing and distributing Comcast's infringing set-top boxes (STBs) in the United States. *See generally In re Certain Digital Video Receivers & Hardware & Software Components Thereof*, Inv. No. 337-TA-1001, Comm'n Op. (Dec. 6, 2017) (Final Public Version). In response, rather than take a license, Comcast disabled certain valuable features that infringed the patents asserted in that ITC action, drawing complaints from Comcast's subscribers.

6.     But the removal of these select features from Comcast's STBs does not remedy Comcast's widespread infringement of Rovi's patents. Because Comcast has made it clear that it will continue to practice Rovi's patents without a license, Rovi is forced to bring this suit to obtain damages, attorneys' fees, and injunctive relief for Comcast's ongoing and willful infringement of the Asserted Patents.

## THE PARTIES

## I.     ROVI: A PIONEER IN MEDIA TECHNOLOGY

7.     Plaintiff Rovi Guides, Inc. is a Delaware corporation, with a principal place of business at 2160 Gold Street, San Jose, California, 95002. Rovi Guides is a wholly owned subsidiary of Rovi Corporation and owns the Asserted Patents.

8.     Rovi is a global leader in digital entertainment technology solutions.

Rovi's market-leading digital entertainment solutions enable the proliferation of access to media on electronic devices. These solutions include products and services related to Interactive Program Guides (IPGs) and other content delivery solutions, content discovery solutions, personalized search and recommendation, advertising and programming promotion optimization, and other data and analytics solutions to monetize interactions across multiple entertainment platforms. Companies worldwide use Rovi's solutions in applications such as cable, satellite, and Internet Protocol television (IPTV) receivers, including, but not limited to, television set-top boxes (STBs) and digital-video receivers (DVRs), PCs, mobile devices, and tablets.

9. Rovi companies are and have been pioneers in media technology, including technology that facilitates consumer access to and discovery of television and other audiovisual media. Since introducing one of the first on-screen electronic program guides in 1981, Rovi has continued to develop innovative products, services, and solutions that connect consumers with their entertainment.

10. Thanks largely to those innovations, Rovi has a portfolio of over 1,200 issued U.S. patents (including the Asserted Patents) and over 500 pending U.S. patent applications, more than 400 of which were filed after the License expired. Rovi's patent portfolio has grown through strategic acquisitions of groundbreaking companies, such as Veveo, and of patent portfolios from world-class innovators, such as Microsoft and Pixelworks. For example, Rovi has acquired patents, including two of the Asserted Patents, from ViXS Systems (ViXS), a Pixelworks subsidiary and pioneer in media processing technologies and semiconductor solutions.

11. Pixelworks has been an innovator in video delivery and display technology for over two decades and has amassed a portfolio of over 535 patents (issued and pending). Pixelworks offers display processing technology and hardware geared at enriching viewing experiences. ViXS is a pioneer in media processing

McKool Smith, P.C.

technology for consumer entertainment devices and Pay-TV markets. Pixelworks acquired ViXS in 2017, and together the companies have continued to develop media processing, delivery, and display technologies.

12.     Rovi's patented inventions are used daily by consumers of media content, and are "must-haves" for television, other media service providers, and the consumer electronics industry that supports them.

13.     In recognition of the importance and value of Rovi's patented technologies and Rovi's role as an innovator, every major U.S. Pay-TV provider, including Comcast until its license agreement expired in 2016, has taken a license to a portfolio of Rovi's patents.

14.     Rovi engineers continue to innovate, bringing Rovi to the forefront of the next generation of IPG technology. In April 2018, Rovi released its Next-Gen Platform, an IPG solution based on Internet Protocol (IP) that allows operators and consumers access to the most advanced television-viewing and navigation features.

15.     Today, in further recognition of the importance of Rovi's innovations, hundreds of small to mid-size cable operators in the United States use Rovi's i-Guide, Passport, and Next-Gen Platform IPG solutions to provide television discovery and navigation features to millions of their subscribers.

## II.   DEFENDANTS

16.     Comcast Corporation is a Pennsylvania corporation, with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania, 19103. Through its wholly owned subsidiaries, Comcast Corporation provides "Comcast" branded services, including Xfinity digital video, audio, and other content services to customers. Subscribers to Comcast's Xfinity television services receive a receiver, such as an STB. Comcast Corporation develops the infringing Xfinity services and equipment and provides the infringing receivers to customers.

McKool Smith, P.C.

17.     Comcast Cable Communications, LLC is a Delaware limited liability company, with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania, 19103. Comcast Cable Communications, LLC is a subsidiary of Comcast Corporation. Comcast Cable Communications, LLC, jointly with the other Defendants, develops the infringing Xfinity services and equipment and provides infringing receivers to customers.

18.     Comcast Cable Communications Management, LLC is a Delaware limited liability company, with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania, 19103. Comcast Cable Communications Management, LLC is a subsidiary of Comcast Corporation. Comcast Cable Communications Management, LLC, jointly with the other Defendants, develops the infringing Xfinity services and equipment and provides infringing receivers to customers.

19.     Comcast Business Communications, LLC is a Pennsylvania limited liability company, with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania, 19103. Comcast Business Communications, LLC is a subsidiary of Comcast Corporation. Comcast Business Communications, LLC, jointly with the other Defendants, develops the infringing Xfinity services and equipment and provides infringing receivers to customers.

20.     Comcast Holdings Corporation is a Pennsylvania corporation, with a principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, Pennsylvania, 19103. Comcast Holdings Corporation is a subsidiary of Comcast Corporation. Comcast Holdings Corporation, jointly with the other Defendants, develops the infringing Xfinity services and equipment and provides infringing receivers to customers.

21.     Comcast Shared Services, LLC is a Delaware corporation, with a principal place of business at 330 N. Wabash Ave. 22, Chicago, IL, 60611-3586.

Comcast Shared Services, LLC is a subsidiary of Comcast Corporation. Comcast Shared Services, LLC, jointly with the other Defendants, develops the infringing Xfinity services and equipment and provides infringing receivers to customers.

22. On information and belief after reasonable investigation, Comcast of Santa Maria, LLC is a Delaware corporation, with a principal place of business at 685 East Betteravia Rd., Santa Maria, CA, 93454. On information and belief after reasonable investigation, Comcast of Santa Maria, LLC is a subsidiary of Comcast Corporation. On information and belief after reasonable investigation, Comcast of Santa Maria, LLC, jointly with the other Defendants, develops the infringing Xfinity services and equipment and provides infringing receivers to customers.

23. On information and belief after reasonable investigation, Comcast of Lompoc, LLC is a Delaware corporation, with a principal place of business at 1145 North H Street, Suite B, Lompoc, CA, 93436. On information and belief after reasonable investigation, Comcast of Lompoc, LLC is a subsidiary of Comcast Corporation. On information and belief after reasonable investigation, Comcast of Lompoc, LLC, jointly with the other Defendants, develops the infringing Xfinity services and equipment and provides infringing receivers to customers.

## JURISDICTION AND VENUE

24. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (action arising under an Act of Congress relating to patents). Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

25. More specifically, this action for patent infringement involves Comcast's manufacture, use, sale and/or lease, offer for sale and/or lease, and/or importation into the United States of its infringing IPG system, including Comcast's: (1) DVRs and related hardware and software components such as X1 DVR and non-

DVR STBs,[1] Xfinity Stream and TV Remote mobile applications,[2] Xfinity Stream Portal,[3] and the servers that operate in conjunction with X1 receivers and Xfinity Stream App and Portal to create the Comcast X1 System; and (2) Xfinity broadband gateways[4] (collectively, the Accused Products).

26.    On information and belief after reasonable investigation, Comcast operates at least two Xfinity stores physically located in the Central District of California. On information and belief after reasonable investigation, Comcast conducts its regular, established business at these locations. These Xfinity stores provide infringing products to customers in this District. Comcast lists these Xfinity stores on its website and identifies them as places where customers can obtain infringing products.[5] On information and belief after reasonable investigation, Comcast owns and/or leases the premises where these Xfinity stores are located. On information and belief after reasonable investigation, Comcast staffs these Xfinity stores with Comcast employees, many of whom live in this District.

27.    This Court has general and/or specific personal jurisdiction over Comcast Corporation, and venue is proper, in part because Comcast Corporation, directly and/or in combination with its subsidiaries and/or through its agents, does continuous and systematic business in this district, including by providing infringing products and services to residents of the Central District of California, by providing

---

[1]    *See X1 TV Box Comparison – DVR vs. Non-DVR*, XFINITY, https://www.xfinity.com/support/articles/x1-hub-vs-companion-box (last visited Apr. 18, 2019).

[2]    *See Set up the XFINITY TV Remote App*, XFINITY, https://www.xfinity.com/support/xfinity-apps/setting-up-the-cable-tv-app/ (last visited Apr. 18, 2019); *Get Access to Xfinity Stream*, XFINITY, https://www.xfinity.com/get-stream (last visited Apr. 18, 2019).

[3]    *See View Programs from Your Xfinity Stream Portal*, XFINITY, https://www.xfinity.com/support/articles/xfinity-tv-website-on-screen-guide (last visited Apr. 19, 2019).

[4]    *Overview of Xfinity Gateways*, XFINITY, https://www.xfinity.com/support/articles/broadband-gateways-userguides (last visited Apr. 19, 2019).

[5]    *See, e.g.*, *685 East Betteravia Rd*, COMCAST, https://www.xfinity.com/local/ca/santa-maria/685-east-betteravia-rd.html (last visited Apr. 18, 2019).

McKool Smith, P.C.

1    infringing products and services that it knew would be used within this district,

2    and/or by participating in the solicitation of business from residents of this district.

3    28.   In addition, upon information and belief, Comcast Corporation, directly

4    or through its subsidiaries, places infringing products in the stream of commerce,

5    which it directs at this district with the knowledge and/or understanding that such

6    products will be sold, leased, or otherwise provided to customers within this district.

7    In addition, upon information and belief, Comcast Corporation, directly or through

8    its subsidiaries, employs individuals within the Central District of California

9    (including employees who provide infringing products and services to customers

10    here) and maintains offices and facilities here. Comcast Corporation, directly or

11    through its subsidiaries, operates highly commercial websites through which it

12    makes regular sales and/or leases of products and/or sales of services to customers in

13    this district, including products and services that, upon information and belief,

14    infringe the Asserted Patents.

15    29.   This Court has general and/or specific personal jurisdiction over

16    Comcast Cable Communications, LLC, and venue is proper, in part because

17    Comcast Cable Communications, LLC, directly and/or in combination with other

18    Comcast entities and/or through its agents, does continuous and systematic business

19    in this district including by providing infringing products and services to residents of

20    the Central District of California, by providing infringing products and services that

21    it knew would be used within this district, and/or by participating in the solicitation

22    of business from residents of this district. In addition, upon information and belief,

23    Comcast Cable Communications, LLC, directly or through its subsidiaries, places

24    infringing products in the stream of commerce, which it directs at this district with

25    the knowledge and/or understanding that such products will be sold, leased, or

26    otherwise provided to customers within this district. In addition, upon information

27    and belief, Comcast Cable Communications, LLC, directly or through its

28

McKool Smith, P.C.

subsidiaries, employs individuals within the Central District of California (including employees who provide infringing products and services to customers here) and maintains offices and facilities here. Comcast Cable Communications, LLC, directly or through its subsidiaries, operates highly commercial websites through which regular sales and/or leases of products and/or sales of services are made to customers in this district, including products and services that, upon information and belief, infringe the Asserted Patents.

30.     This Court has general and/or specific personal jurisdiction over Comcast Cable Communications Management, LLC, and venue is proper, in part because Comcast Cable Communications Management, LLC, directly and/or in combination with other Comcast entities and/or through its agents, does continuous and systematic business in this district including by providing infringing products and services to residents of the Central District of California, by providing infringing products and services that it knew would be used in this district, and/or by participating in the solicitation of business from residents of this district. In addition, upon information and belief, Comcast Cable Communications Management, LLC, directly or through its subsidiaries, places infringing products in the stream of commerce, which it directs at this district, with the knowledge and/or understanding that such products will be sold, leased, or otherwise provided to customers within this district. In addition, upon information and belief, Comcast Cable Communications Management, LLC, directly or through its subsidiaries, employs individuals within the Central District of California (including employees who provide infringing products and services to customers here) and maintains offices and facilities here. Comcast Cable Communications Management, LLC, directly or through its subsidiaries, operates highly commercial websites through which regular sales and/or leases of products and/or sales of services are made to customers in this district, including products and services that, upon information and belief, infringe

McKool Smith, P.C.

1   the Asserted Patents.

2       31.    This Court has general and/or specific personal jurisdiction over

3   Comcast of Santa Maria, LLC and venue is proper, in part, because Comcast of

4   Santa Maria, LLC, directly and/or in combination with other Comcast entities and/or

5   through its agents, does continuous and systematic business in this district including

6   by providing infringing products and services to residents of the Central District of

7   California, by providing infringing products and services that it knew would be used

8   within this district, and/or by participating in the solicitation of business from

9   residents of this district. In addition, upon information and belief, Comcast of Santa

10   Maria, LLC, directly or through its subsidiaries, places infringing products within

11   the stream of commerce, which it directs at this district with the knowledge and/or

12   understanding that such products will be sold, leased, or otherwise provided to

13   customers within this district. In addition, upon information and belief, Comcast of

14   Santa Maria, LLC, directly or through its subsidiaries, has a regular and established

15   business within the Central District of California, at least at the Comcast store and

16   service center at 685 East Betteravia Rd., Santa Maria, CA, 93454. In addition, upon

17   information and belief, Comcast of Santa Maria, LLC, directly or through its

18   subsidiaries, employs individuals within the Central District of California (including

19   employees who provide infringing products and services to customers here) and

20   maintains offices and facilities here. Comcast of Santa Maria, LLC, directly or

21   through its subsidiaries, operates highly commercial websites through which regular

22   sales and/or leases of products and/or sales of services are made to customers in this

23   district, including products and services that, upon information and belief, infringe

24   the Asserted Patents.

25       32.    This Court has general and/or specific personal jurisdiction over

26   Comcast of Lompoc, LLC, and venue is proper, in part because Comcast of

27   Lompoc, LLC, directly and/or in combination with other Comcast entities and/or

McKool Smith, P.C.

through its agents, does continuous and systematic business in this district including by providing infringing products and services to residents of the Central District of California, by providing infringing products and services that it knew would be used in this district, and/or by participating in the solicitation of business from residents of this district. In addition, upon information and belief, Comcast of Lompoc, LLC, directly or through its subsidiaries, places infringing products in the stream of commerce, which it directs at this district with the knowledge and/or understanding that such products will be sold, leased, or otherwise provided to customers in this district. In addition, upon information and belief, Comcast of Lompoc, LLC, directly or through its subsidiaries, has a regular and established business within the Central District of California, at least at the Comcast store and service center at 1145 North H Street, Suite B, Lompoc, CA, 93436. In addition, upon information and belief, Comcast of Lompoc, LLC, directly or through its subsidiaries, employs individuals in the Central District of California (including employees who provide infringing products and services to customers here) and maintains offices and facilities here. Comcast of Lompoc, LLC, directly or through its subsidiaries, operates highly commercial websites through which regular sales and/or leases of products and/or sales of services are made to customers in this district, including products and services that, upon information and belief, infringe the Asserted Patents.

33.    This Court has general and/or specific personal jurisdiction over the remaining Defendants, and venue is proper, in part because said Defendants, directly and/or in combination with Comcast Corporation and/or other Comcast Corporation subsidiaries and/or their agents, do continuous and systematic business in this district including by providing infringing products and services to residents of the Central District of California, by providing infringing products and services that it knew would be used within this district, and/or by participating in the solicitation of business from residents of this district.

34.     Venue is appropriate in this Court because the Plaintiff maintains its business in this District. One of Rovi's primary offices is situated at 2233 N. Ontario St., Burbank, CA 91504 and employs approximately 85 employees, including witnesses expected to testify in this action.

**FACTUAL BACKGROUND**

**I.   ROVI'S HISTORY OF INNOVATION AND COMMERCIAL SUCCESS**

35.     Rovi has invested in developing the substantial majority of the pioneering advances in IPG technology and related functionality for subscription-based television (aka Pay-TV) broadcasting.

36.     Since the launch of TV Guide Magazine in 1953, the Rovi family of companies (which has included, through strategic mergers, joint ventures, and acquisitions, United Video, TV Guide Onscreen, StarSight Telecast, Prevue, TV Guide, Video Guide, Gemstar, Aptiv Digital, Macrovision, Fanhattan, and Veveo) has been a pioneer and recognized leader in media technology, including technology used to facilitate consumer access to television and other audiovisual media. Today, Rovi's market-leading digital entertainment solutions enable the proliferation of access to media on electronic devices. These solutions include products and services related to IPGs and other content discovery solutions, personalized search and recommendation, advertising and programming promotion optimization, and other data and analytics solutions to monetize interactions across multiple entertainment platforms. Companies worldwide use Rovi's solutions in applications such as cable, satellite, and Internet Protocol television (IPTV) receivers, including, but not limited to, STBs, DVRs, PCs, mobile devices, and tablets.

37.     United Video was founded in 1965 in Tulsa, OK. United Video was a visionary in broadcasting and entertainment throughout its history. United Video offered the first electronic program guide in North America in 1981, almost 30 years after the launch of TV Guide Magazine. This electronic program guide automatically

McKool Smith, P.C.

scrolled through program listings and did not provide any interactive program features. Interactive program guides, which allow viewers to interact with program listings, only became available later. Thus, before the 1990s and before United Video's innovations during that time period, television viewers could only access program listings with printed guides or automatically scrolling electronic guides.

38.     In the 1990s, United Video's innovations established itself as a pioneer in digital broadcasting and interactive program guide technology, such as advanced DVR features. United Video's forward-looking advanced DVR technologies—including functionalities such as remote server recording and IPG-maintained DVR directory systems that relate to some of the Asserted Patents—remain important features for the cable industry even today.

39.     In the late 1980s, another Rovi company invented the VCR Plus®, which significantly simplified programming of videocassette recorders, enabling television subscribers to more easily record the content they desired. VCR Plus® was a resounding success and helped establish the Rovi family of companies as the frontrunner in the program guide industry by broadly licensing its VCR Plus® product and related technologies.

40.     In the mid-1990's, another Rovi company launched the first IPG services designed for use in Pay-TV television receivers. These early IPGs were full-screen grid guides that displayed television program listings by time and channel in a two-dimensional grid. Using a remote control, a user could interact with the guides to see, for example, what was on television at a later time or on a different channel, instead of depending on the automated scrolling of a traditional on-screen guide.

41.     Rovi's IPG technologies today allow for multi-screen entertainment across a variety of user devices (e.g., seamless access to the same media from multiple devices and device types like a television and mobile device), and provide customizable listings for televisions, receivers, game consoles, and mobile devices,

thereby allowing consumers to find, discover, and enjoy the content they want, when they want it, and where they want to access it. These and other innovations help users navigate an increasingly overwhelming amount of content to discover and access entertainment they actually want to watch on virtually any platform or device.

42.     To maintain Rovi's leadership position in this industry, Rovi has invested and continues to invest significant resources in the design, development, and licensing of its IPGs and related technologies used by television service providers (as well as others in the digital entertainment industry). For example, from 2014 to 2017, Rovi invested over $300 million in research and development. Furthermore, Rovi has over 600 U.S.-based, full-time employees supporting the development of new products and platforms.

43.     Rovi has incorporated its technological innovations resulting from its significant investment in research and development into its commercial products. For example, Rovi's i-Guide and Passport Guide are IPGs that provide comprehensive listings, intuitive search capabilities, advanced DVR and Video-on-Demand functionality, and HD support. Hundreds of small to mid-size cable operators, serving millions of subscribers in the United States, use Rovi's i-Guide and Passport Guide IPG solutions today.

44.     In addition, Rovi invests heavily in next-generation Internet Protocol television (IPTV) solutions. These investments have led to groundbreaking products like the Next-Gen Platform IPG solution, which was announced to the public in January 2018 and released to the public in April 2018. The Next-Gen Platform IPG solution serves an expanding base of retail TiVo Bolt/VOX hardware users and cable operator-customers with industry-leading IPTV features.

45.     The value of Rovi's innovative solutions has been recognized by numerous leading Pay-TV service providers, which license these technologies and solutions from Rovi. Today, almost 150 million households worldwide access Pay-

McKool Smith, P.C.

1    TV entertainment through Rovi's technology.

2        46.    In addition, Rovi's innovative IPG-related technologies have been

3    recognized through numerous industry awards and accolades. For example, in 2012,

4    Rovi was awarded a Technology and Engineering Emmy® Award for its

5    "Pioneering On-Screen Interactive Program Guides" that assist "viewer[s] in rapidly

6    locating their desired program." These Emmy® awards recognize "developments . . .

7    involved in engineering technologies which either represent so extensive an

8    improvement on existing methods or are so innovative in nature that they materially

9    have affected the transmission, recording, or reception of television."[6]

10       47.    Rovi's history of innovation is also reflected in the extensive patent

11   coverage awarded to Rovi for its inventions. This portfolio, which includes more

12   than 4,500 issued or pending patents worldwide, is a direct result of Rovi's

13   substantial and ongoing investment in research and development. The Asserted

14   Patents are reflective of this history of innovation, embodying a number of firsts in

15   the development of IPG and advanced DVR-related technologies.

16       48.    The entertainment industry also recognizes the strength of Rovi's patent

17   portfolio. Every major U.S. Pay-TV provider—including AT&T (which recently

18   acquired DirecTV), Charter, Cox, Dish, and Verizon among others—has

19   acknowledged the value of Rovi's innovations by licensing Rovi's patents covering

20   these innovations—and renewing those licenses in the last few years. Comcast itself

21   once licensed Rovi's portfolio for over $250 million for a fixed term (March 2004 –

22   March 2016). Many leading video-content providers have also licensed Rovi's

23   patent portfolio, including traditional media (cable, satellite, IPTV), new media

24   (online, mobile), and manufacturers and distributors of receivers and other consumer

25   electronic devices. Yet, despite this widespread recognition of the value and

---

[6]    *Technology & Engineering*, THE NATIONAL ACADEMY OF TELEVISION ARTS &
SCIENCES, http://emmyonline.com/tech (last visited Apr. 18, 2019).

enforceability of Rovi's patent portfolio, Comcast decided to free ride, refusing to renew its license and compensate Rovi.

49.    Rovi's long-term financial success depends, in part, on its ability to establish, maintain, and protect its proprietary technology through patents. Comcast's infringement presents significant and ongoing harm to Rovi's business.

## II.    COMCAST HAS LONG BENEFITED FROM ITS USE OF ROVI'S PATENTED TECHNOLOGIES

50.    Before Comcast first licensed Rovi's patents, it measured business success with reference to how many subscribers it had. Comcast did not historically measure its business success by the quality of the services it provided to its customers. Comcast touted itself in its 2002 10-K as being the "largest cable operator in the United States."

51.    Beginning in or around 2004, Comcast began attributing revenue growth to its "advanced services," including Video-on-Demand (VOD) and digital-video-recording (DVR). Comcast recognized that its future business success depended on product differentiation from other cable operators and satellite providers through offering advanced services to its customers.

52.    In 2004, to secure the growth in its "advanced services," Comcast entered into the License with Gemstar (a forerunner to Rovi). In SEC filings, Comcast described the License as an effort "to acquire and develop technology that will drive product differentiation and new applications and extend our nationwide fiber-optic network"[7] and enhance Comcast's IPG platform to improve Comcast's ability to challenge its competitors. Importantly, the License was not a sale of technology from Gemstar to Comcast by which Comcast "acquired" the technology from Gemstar; it was a license for a fixed term during which Comcast had

_____

[7]    *See* Comcast Annual Report 2004 at 18, available at http://www.annualreports.com/HostedData/AnnualReportArchive/c/NASDAQ_CMCSA_2004.pdf.

McKool Smith, P.C.

permission from Gemstar to use Gemstar's guidance patent portfolio technology for specific purposes, but only until the license expired. The License also included a Joint Venture with Gemstar called GuideWorks, under which Gemstar would help Comcast develop a next-generation IPG platform.

53.    For years, Comcast publicly admitted that the technology Rovi licensed to Comcast during the term of the License was foundational to Comcast's ability to offer new and advanced services, to grow its business, and to develop its own IPG and advanced service platforms. Comcast describes the License as a "strategic agreement[] with Gemstar-TV Guide" to "develop enhancements to the user interface and the functionality of its service offerings."[8]

54.    Comcast's 10-K SEC filings from 2004 to date consistently recognize the importance of the Rovi technology needed to provide advanced services in connection with Comcast's digital cable services, including advanced VOD and DVR features. Indeed, in its 2004 10-K, Comcast noted that its "subscriber growth is attributable to new and improved products and advanced services in our digital cable and high-speed Internet services."[9] Because increased competition from telecommunications providers, Internet service providers (ISPs), and satellite companies in the provision and delivery of new and advanced services has been one of Comcast's greatest competitive concerns, Comcast's 10-K SEC filings since 2004 highlight the importance of Comcast's advanced services, which rely on Rovi's patented technology.

55.    For example, Comcast's 2006 10-K SEC filing highlights the value of Comcast's use of Rovi's (then Gemstar's) technology to develop and enhance

---

[8]    *Comcast Timeline,* COMCAST, https://corporate.comcast.com/news-information/timeline (last visited Apr. 18, 2019, and available at https://web.archive.org/web/20190202223708/https://corporate.comcast.com/news-information/timeline).

[9]    *See* Comcast Annual Report 2004 at 18.

Comcast's IPGs. Comcast stated, "This [the License] allows us to utilize Gemstar's intellectual property and technology and the TV Guide brand and content on our interactive program guides . . . In addition, we and Gemstar formed an entity to develop and enhance interactive programming guides."[10]

56.    In 2010, Comcast and Rovi terminated their joint venture, but Comcast reaffirmed its need for Rovi technology by entering into an expanded patent license agreement with Rovi. Indeed, Rick Rioboli, SVP, Comcast Metadata Products and Search Services, remarked that "Rovi has been a very important partner of ours for many years."[11]

57.    In 2012, while under license to Rovi's patents, Comcast launched the X1 IPG Product, which it describes as "a cloud-enabled video platform that transformed the TV into an interactive, integrated entertainment experience."[12]

58.    In 2014, also during the pendency of its then soon-to-expire License to Rovi's patents, Comcast introduced the next generation of its X1 IPG Product, which it describes as "designed to make navigation, search and discovery of content easier and quicker than ever before. The X1 IPG Product gives customers an interactive TV experience, providing instant access to all of their Entertainment."[13]

59.    As set forth herein, Comcast's X1 IPG Product and Xfinity broadband gateways are designed to and do infringe at least one claim of each of the Asserted Patents.

60.    Comcast has an installed base of several million X1 subscribers and is continuing to market throughout the United States to further expand the reach of its

---

[10]    *Id.* at 48.

[11]    *Rovi Corporation Sends Letter to Stockholders*, TIVO,
http://pr.tivo.com/file/4206196/Index?KeyFile=29075378 (last visited Apr. 18, 2019).

[12]    *See Our Story*, COMCAST, http://corporate.comcast.com/our-company/our-story, archived at https://web.archive.org/web/20170519044316/http://corporate.comcast.com/our-company/our-story (last visited Apr. 18, 2019).

[13]    *Id.*

X1 IPG Product.[14]

61.     Even today, Comcast admits that its "businesses depend on" the "deployment" and "continued development" of its infringing "set-top boxes, cloud DVR[,] and wireless gateways."[15]

62.     On March 31, 2016, Comcast's License to use the Rovi technology expired. Comcast refused to execute a new license. Yet Comcast continues to practice the inventions claimed in Rovi's patents and continues to offer, lease, and distribute the X1 product and enhanced IPG platform, which infringes Rovi's patents and never would have been lawfully developed but for the now-expired License.

## III.   COMCAST AND ROVI ARE COMPETITORS IN THE DEVELOPMENT AND PROVISION OF IPG SOLUTIONS

63.     Comcast markets and provides its Accused Products, including the X1 IPG Product, in the United States to subscribers. Comcast explains to its subscribers and potential subscribers that the Accused Products, including X1 STBs, provide features the Asserted Patents cover. For example, Comcast has branded features such as the "X1 Sports App"[16] and provides instructions for these features on its website and forums.

64.     Rovi invests in the development of IPGs, including Next-Gen, i-Guide, and Passport that compete directly and indirectly with Comcast's Accused Products in the United States. Rovi's next-generation IPTV products provide functionalities the Asserted Patents cover, such as DVR directories and real-time data in IPGs. In the first half of 2019, Next-Gen will include both network DVR and Start Over and Catch Up (nDVR and SOCU) functionalities that provide viewers with directories of

---

[14]     *See* Comcast Annual Report 2017 at 3-4 (Comcast's cable distribution footprint), 40, available at https://www.cmcsa.com/static-files/111ba611-eb85-4edc-9000-3907c84697d8; CMCSA.

[15]     *See id.* at 21.

[16]     *Access and Watch Games on the X1 Sports App*, Xfinity, https://www.xfinity.com/support/articles/x1-sports-app-watch-games (last visited Apr. 18, 2019).

McKool Smith, P.C.

remote server recordings and the ability to start over or catch up on broadcast programs with copies retained at remote servers.

65.     In further competition with Rovi, Comcast also markets and licenses its Accused Products, including the X1 IPG Product, in the United States to other Pay-TV providers as part of Comcast's X1 Syndication Platform.[17] As an example of this competition between Rovi and Comcast, Cequel III Programming, LLC d/b/a Suddenlink Communications (Suddenlink) has, for the past several years, licensed Rovi's i-Guide IPG platform, which Suddenlink has deployed to hundreds of thousands of subscribers. In direct competition with Rovi, Comcast has marketed its X1 syndication product, including the DVR features that the Asserted Patents cover, to Suddenlink.

66.     On April 20, 2016, to further encourage and enable television and consumer-electronics companies to implement Comcast's infringing X1 IPG, Comcast launched the Xfinity TV Partner Program with an application that "provide[s] access to [Comcast's] TV cable service, . . . live and on demand programming and cloud DVR recordings, and will be available on partners' smart TVs, TV-connected devices, and other IP-enabled video devices."[18] Comcast continues to promote its Xfinity TV Partner Program today, advertising "an intuitive user interface, personalized content, and cloud DVR recordings."[19]

---

[17]     *Transforming Your Customers' Experience*. COMCAST TECHNOLOGY SOLUTIONS, https://www.comcasttechnologysolutions.com/our-portfolio/x1-platform (last visited Apr. 18, 2019).

[18]     Mark Hess, *Comcast Seeks TV and Other Consumer Electronics Partners to Bring Xfinity TV Cable Service to More Retail Devices*, COMCAST, available at https://corporate.comcast.com/comcast-voices/comcast-seeks-partners-to-bring-xfinity-tv-cable-service-to-more-retail-devices (last visited Apr. 18, 2019); *see also* Jeff Baumgartner, *Comcast to Stream Its Pay TV Service to LG TVs*, MULTICHANNEL, available at https://www.multichannel.com/news/comcast-stream-its-pay-tv-service-lg-tvs-415485 (last visited Apr. 18, 2019).

[19]     *Comcast Statement on Xfinity TV and Streaming Services*, https://corporate.comcast.com/press/releases/comcast-statement-on-xfinity-tv-and-streaming-devices (last visited Apr. 18, 2019).

McKool Smith, P.C.

67.    In direct competition with Rovi's own patent-protected IPG products, Comcast will continue to market its X1 IPG Product to customers as well as to other Pay-TV providers (including Pay-TV providers that do not have a license to Rovi's patents).

## IV.  COMCAST'S INFRINGING PRODUCTS AND SERVICES

68.    Comcast is in the business of providing digital video, audio, and other content services to customers under the name "Xfinity." Comcast provides its subscribers with at least one Accused Product that is necessary for the receipt of such services.

69.    On information and belief after reasonable investigation, Comcast and/or entities under Comcast's direction and control provide Xfinity products and services to consumers. Directly or indirectly, Comcast Corporation owns regional subsidiaries that provide telecommunications and video services to customers in a number of states. Xfinity services have been made available to consumers through at least the following regional subsidiaries owned, directly or indirectly, by Comcast Corporation:                           Comcast                           of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, Inc.; Comcast of Boston, Inc.; Comcast of California II, LLC; Comcast of California III, Inc.; Comcast of California IX, Inc.; Comcast of California/Colorado, LLC; Comcast of California/Colorado/Florida/Oregon,                 Inc.;                 Comcast                 of California/Colorado/Illinois/Indiana/Michigan,                 LP;                 Comcast                 of California/Maryland/Pennsylvania/Virginia/West   Virginia,   LLC;   Comcast   of California/Massachusetts/Michigan/Utah, LLC; Comcast of Colorado IX, LLC; Comcast  of  Colorado/Florida/Michigan/New  Mexico/Pennsylvania/Washington, LLC; Comcast of Colorado/Pennsylvania/West Virginia, LLC; Comcast of Connecticut,   Inc.;   Comcast   of   Connecticut/Georgia/Massachusetts/New Hampshire/New  York/North  Carolina/Virginia/Vermont,  LLC;  Comcast  of

McKool Smith, P.C.

Florida/Georgia/Illinois/Michigan, LLC; Comcast of Florida/Georgia/Pennsylvania, L.P.; Comcast of Garden State, L.P.; Comcast of Houston, LLC; Comcast of Illinois VI, Inc.; Comcast of Illinois/Indiana/Ohio, LLC; Comcast of Lompoc, LLC; Comcast of Maine/New Hampshire, Inc.; Comcast of Maryland, LLC; Comcast Cable of Maryland, LLC; Comcast of Massachusetts I, Inc.; Comcast of Massachusetts II, Inc.; Comcast of Massachusetts III, Inc.; Comcast of Massachusetts/New Hampshire, LLC; Comcast of New Jersey II, LLC; Comcast of Oregon II, Inc.; Comcast of Philadelphia II, LLC; Comcast of Potomac, LLC; Comcast of Santa Maria, LLC; Comcast of South Jersey, LLC; Comcast of Southeast Pennsylvania, LLC; Comcast of the South; Comcast of Utah II, Inc.; and Mile Hi Cable Partners, LP (collectively, Regional Subsidiaries).

70.    Comcast Corporation and its Regional Subsidiaries hold themselves out as a single entity in providing the infringing Xfinity products and services. Comcast's various Xfinity services are centrally advertised, documented, and explained on the website www.xfinity.com. On information and belief after reasonable investigation, the Comcast Regional Subsidiaries use identical contracts and other documents in the provision of the infringing Comcast Xfinity products and services that Comcast Corporation and the Regional Subsidiaries generate and approve. For example, Comcast Xfinity TV services have the same "Residential Services Policies" for residential customers regardless of their location.[20]

71.    On information and belief after reasonable investigation, acting through one or more of its officers and/or directors, Comcast Corporation has: (a) approved and authorized the Regional Subsidiaries' development of the technology and infrastructure necessary to offer the Xfinity service to the consuming public; (b) approved and authorized capital expenditures by the Regional Subsidiaries as

---

[20]    *See Xfinity Terms of Service*, XFINITY, http://my.xfinity.com/terms/ (last visited Apr. 18, 2019).

McKOOL SMITH, P.C.

necessary to provide the Xfinity service to consumers; and/or (c) authorized and directed the Regional Subsidiaries to provide the Xfinity service under the Comcast brand to consumers in their operating areas. Comcast Corporation further directed and controlled the activities of the Regional Subsidiaries. In doing so, Comcast Corporation (together with the remaining Defendants) actively induced the infringement of the Regional Subsidiaries.

72.    Comcast markets the Xfinity service to subscribers of each of the Regional Subsidiaries described above and actively solicits their business through Comcast's website.

73.    Comcast has been involved in the design, testing, and implementation of the Xfinity service. Comcast provides overall management and coordination of the elements of the network used to deliver Comcast's Xfinity services, and of the Regional Subsidiaries that own and operate those elements.

74.    In addition, Comcast has caused and directed at least the Regional Subsidiaries to engage in activities, including those activities described above, that have resulted in the infringement of one or more claims of the Asserted Patents. In performing the activities that, either individually or in combination, have infringed one or more claims of the Asserted Patents, the Regional Subsidiaries have acted as agents of at least Comcast Corporation, and their infringing activities have been within the course and scope of that agency.

75.    Comcast does not manufacture the STBs it provides to Xfinity customers, but it is closely "involved with the design, manufacture, and importation" of these Accused Products. *Certain Digital Video Receivers and Hardware and Software Components Thereof*, Inv. No. 337-TA-1001, Initial Determination (June 27, 2017) (Final Public Version) at 12. Comcast's X1 STBs are "so tailored" to Comcast's X1 system that "they would not function within another cable operator's system." *Id*. (citations omitted).

76. Comcast STBs contain, or are designed to receive and execute, software (including IPG software) enabling a Comcast subscriber to infringe the Asserted Patents. The receivers are specifically manufactured to be combined with such software for use in Comcast's service infrastructure. Comcast leases and/or otherwise provides to its subscribers these receivers along with user guides and manuals describing how to use the receivers and their associated features.

77. In addition, Comcast provides mobile applications, such as the Xfinity Stream App, for controlling DVR and program guide functionality that only paying subscribers to Comcast's Xfinity services can use. Comcast enables subscribers to download and store DVR recordings on their mobile devices using the Xfinity Stream App.

78. Comcast has engaged in activities that promote the use and distribution of the X1 IPG Product and the Xfinity services and thereby encourages the infringement of Rovi's patents.

79. Comcast's activities include, among others, its instructions for X1 subscribers on how to infringe Rovi's patents. For example, Comcast instructs subscribers, including on its website and through instructional videos, on how to "Store Hundreds of Shows" and access a directory of their recordings "by selecting Saved on the Xfinity menu."[21] Comcast further instructs its X1 subscribers on the use of Cloud DVR,[22] restarting a program from the beginning after tuning to a channel,[23] the X1 Sports App,[24] AnyRoom DVR configurations,[25] and X1

---

[21] *X1 DVR Services Overview*, XFINITY, https://www.xfinity.com/support/articles/x1-dvr-overview (last visited Apr. 18, 2019); *see also X1 DVR and On-Screen Guide Overview Video*, XFINITY, https://www.xfinity.com/support/articles/x1-dvr-on-screen-guide-overview (last visited Apr. 18, 2019).

[22] *X1 Cloud DVR FAQs*, XFINITY, https://www.xfinity.com/support/articles/x1-dvr-cloud-technology-general-faqs (last visited Apr. 18, 2019); *X1 Cloud DVR Overview*, XFINITY, https://www.xfinity.com/support/articles/x1-dvr-with-cloud-technology-available-features (last visited Apr. 18, 2019).

[23] *New This Month On X1: A More Intuitive and Navigable User Experience*, COMCAST (May 15, 2015), available at https://corporate.comcast.com/comcast-voices/new-this-month-on-x1-a-more-

McKOOL SMITH, P.C.

1    Applications.[26]

2        80.    Comcast obtains significant quantities of specially designed, unlicensed

3    receivers, including STBs, from third parties.

4        81.    Over half of Comcast's 22 million subscribers are on the X1 platform.[27]

5    Comcast has had and continues to have significant involvement in the importation

6    and distribution of receivers. Comcast has held itself out as the "supplier" of its

7    receivers, including the STBs it distributes to its subscribers. For example, in its

8    FCC filing Comcast made regarding its potential merger with Time Warner,

9    Comcast repeatedly referred to "Comcast-supplied set-top boxes," and characterized

10   STBs used in connection with the X1 platform as "Comcast's."[28]

11       82.    These Comcast receivers contain, or are designed to receive and execute,

12   software (including IPG software) enabling features such as: X1 DVR directories,

13   X1 Cloud DVR, the X1 Sports App, AnyRoom DVR, and X1 Applications. Comcast

14   designs the infringing IPG software that is loaded onto such receivers (and for which

15   purpose such receivers were designed).

16       83.    Similarly, Comcast "develop[s]" and "deploy[s]" the infringing software

17   that is loaded onto the X1 broadband gateways (and for which such gateways were

18

19

20   intuitive-and-navigable-user-experience (last visited Apr. 18, 2019).
     [24]    *See Access and Watch Games on the X1 Sports App*, XFINITY,
21   https://www.xfinity.com/support/articles/x1-sports-app-watch-games (last visited Apr. 18, 2019).
22   [25]    *X1 TV Box Comparison – DVR vs. Non-DVR*, XFINITY,
     https://www.xfinity.com/support/articles/x1-hub-vs-companion-box (last visited Apr. 18, 2019).
23   [26]    *X1 Apps on Your TV*, XFINITY, https://www.xfinity.com/support/articles/dashboard-for-
     xfinity-tv-on-the-x1-platform (last visited Apr. 18, 2019).
24   [27]    David Hayes, *Comcast X1 Subscribers Can Get Epix In Early 2018 Under New Distribution
     Deal*, DEADLINE (Nov. 28, 2017, 9:33 AM), http://deadline.com/2017/11/comcast-x1-subscribers-
25   get-epix-in-early-2018-under-new-distribution-deal-1202215657/ (last visited Apr. 18, 2019).
26   [28]    *See generally In re Comcast Corp.*, MB Dkt. No. 14-57, Opp'n to Pets. to Deny & Resp. to
     Comments (Sept. 23, 2014), *available at* http://apps.fcc.gov/ecfs/document/view?id=7522909787
27   (last visited Apr. 18, 2019).

28

McKOOL SMITH, P.C.

designed).[29]

84.    Xfinity products and services are provided to consumers through the coordinated and combined participation of Comcast and/or entities under Comcast's instruction, direction, and/or control.

## V.    COMCAST REFUSES TO RENEW ITS LICENSE— NOTWITHSTANDING LITIGATION AND FINDINGS OF INFRINGEMENT OF CERTAIN ROVI PATENTS

85.    On April 1, 2016, Rovi sued Comcast in two district court actions for infringing various patents not asserted here. One of those actions is stayed in the Southern District of New York (Case No. 1:16-cv-09826). The other action is partially stayed in the Southern District of New York while proceeding on certain claims. (Case No. 1:16-cv-09278). On April 6, 2016, Rovi brought an enforcement action against Comcast in the ITC for importing products that infringe certain patents not asserted here. In November 2017, the Commission found that Comcast's X1 STBs infringed two of those patents, excluded future imports of these boxes, and ordered Comcast not to import or distribute infringing products. *See generally In re Certain Digital Video Receivers & Hardware & Software Components Thereof*, Inv. No. 337-TA-1001, Comm'n Op. (Dec. 6, 2017) (Final Public Version). On January 10, 2018, Rovi sued Comcast in two district court actions for infringing various patents not asserted here. On February 8, 2018, Rovi brought an enforcement action against Comcast in the ITC for importing products that infringe these same patents (Inv. No. 337-TA-1103). The two district court actions are stayed in the Central District of California (Case No. 2:18-cv-00253) and the District of Massachusetts (Case No. 1:18-cv-10056) pending the resolution of the enforcement action in the ITC.

---

[29]    *See* Comcast Annual Report 2017 at 3, 21, 41, available at https://www.cmcsa.com/static-files/111ba611-eb85-4edc-9000-3907c84697d8.

MCKOOL SMITH, P.C.

86.     On January 14, 2019, Rovi once Comcast in this District. This action is pending in the Central District of California (Case No. 2:19-cv-00275). Despite the ITC's orders and the currently pending actions, Comcast refuses to renew its License to Rovi's portfolio. Comcast continues to make, use, sell, offer to sell, lease, offer to lease, import, and distribute products that infringe Rovi's patents, including the Asserted Patents. Comcast continues to violate Rovi's intellectual property rights with impunity and use Rovi's technology for free while all of Comcast's competitors agree to pay a reasonable price for a license to Rovi's valuable patent portfolio.

## FIRST CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 8,001,564

87.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-86 of this Complaint.

88.     The '564 Patent is valid and enforceable under United States Patent Laws.

89.     Rovi Guides, Inc., owns, by assignment, all right, title, and interest in and to the '564 Patent, including the right to collect for past damages.

90.     A certified copy of the '564 Patent is attached as Exhibit A.

## The '564 Patent

91.     The '564 Patent describes, among other things, a system and method for digitally storing programs and associated program data using an interactive program guide. The '564 Patent discloses digitally storing programs and associated program data and maintaining a directory of the digitally stored associated program data using an interactive television program guide. The invention allows for an interactive television program guide with more advanced features than would be possible with analog storage. This also allows users to navigate and interact with digitally stored programs and associated program data.

MCKOOL SMITH, P.C.

McKool Smith, P.C.

### '564 Patent Allegations

92.     Comcast markets the infringing functionality as X1 DVR.[30] Comcast provides the Xfinity System to subscribers, which includes directories of digitally stored programs (the '564 Accused Products). Comcast performs the methods claimed in the '564 Patent by digitally storing programs and associated program data and maintaining directories using the X1 IPG.

93.     Comcast has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1-4 and 12-15 of the '564 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by making, using, offering for sale/lease, leasing, distributing in the United States, and/or importing into the United States without authority or license, STBs, including without limitation, one or more of the Accused Products ('564 Accused Products) and associated software (including at least the Xfinity-branded IPG and mobile applications) that are used to infringe one or more claims of the '564 Patent. On information and belief after reasonable investigation, each of the '564 Accused Products are designed to be and are used with each other and Comcast's servers to digitally store programs and associated program data and maintain a directory of the digitally stored program data using the IPG.

94.     Comcast has been, and currently is, an active inducer of infringement of one or more claims of the '564 Patent under 35 U.S.C. § 271(b). On information and belief after reasonable investigation, one or more of the '564 Accused Products of Comcast directly and/or indirectly infringe (by induced infringement) one or more claims of the '564 Patent, literally and/or under the doctrine of equivalents.

95.     Comcast has had actual knowledge of the '564 Patent since at least September 23, 2014, when Rovi provided claim charts to Comcast mapping the

---

[30]     *X1 DVR Services Overview*, Xfinity, https://www.xfinity.com/support/articles/x1-dvr-overview (last visited Apr. 18, 2019),

1    Defendants' products to the '564 Patent.

2        96.    Rovi again provided Comcast notice of the '564 Patent by identifying

3    the '564 Patent in a list of Rovi patents sent to Comcast in April 2015.

4        97.    This Complaint also serves as notice to Comcast of the '564 Patent and

5    its infringement.

6        98.    Comcast intentionally encourages and aids at least service providers and

7    end-user subscribers to directly infringe the '564 Patent.

8        99.    Comcast provides the '564 Accused Products and instructions to Xfinity

9    subscribers so that subscribers will use the '564 Accused Products in a directly

10   infringing manner. Comcast markets the Xfinity System by touting the digital

11   storage capacity of X1 DVRs.  For example, Comcast advertises that X1 DVRs can

12   digitally record "50 total hours" of programming.[31] Comcast instructs subscribers,

13   including on its website and through instructional videos, on how to "Store

14   Hundreds of Shows" and access a directory of their recordings "by selecting Saved

15   on the Xfinity menu."[32] Comcast markets the Xfinity System to subscribers by

16   touting the "X1 Cloud DVR" to "[a]ll X1 customers with DVR service in launched

17   areas."[33]  Comcast advertises that subscribers can access recordings stored on remote

18   servers "on mobile devices with the Xfinity Stream app, or on a computer" and can

19   stream DVR recordings on "up to five devices in and out of your home."[34] Comcast

20   also provides instructions to its subscribers on how to use the functionality of the

21

22   ─────────────────
     [31]    *X1 DVR Services Overview*, Xfinity, https://www.xfinity.com/support/articles/x1-dvr-
23   overview (last visited Apr. 18, 2019),

24   [32]    *Id*; *see also X1 DVR and On-Screen Guide Overview Video*, Xfinity,
     https://www.xfinity.com/support/articles/x1-dvr-on-screen-guide-overview (last visited Apr. 18,
25   2019).

26   [33]    *X1 Cloud DVR FAQs*, Xfinity, https://www.xfinity.com/support/articles/x1-dvr-cloud-
     technology-general-faqs (last visited Apr. 18, 2019).

27   [34]    *Id.*; *X1 Cloud DVR Overview*, Xfinity, https://www.xfinity.com/support/articles/x1-dvr-
     with-cloud-technology-available-features (last visited Apr. 18, 2019).

28                                        29
                      COMPLAINT FOR PATENT INFRINGEMENT

McKool Smith, P.C.

'564 Patent on its website.[35]

100.   For example, a claim chart applying independent claims 1 and 12 of the '564 Patent to the Accused Products (as defined herein, which include related hardware and software components) with a mobile application and/or Comcast X1 STB operating Comcast Xfinity X1 software is attached as Exhibit B. This chart is an exemplary chart representative of the infringing operation of all set-top box Accused Products, which operate the Comcast Xfinity X1 software to provision both Cloud and local DVR services.

101.   Comcast's subscribers directly infringe the '564 Patent by using the Accused Products in their intended manner. With full knowledge of the '564 Patent, Comcast induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement. On information and belief, Comcast specifically intends that its actions will result in infringement of the '564 Patent or has taken deliberate action to avoid learning of infringement.

102.   With full knowledge of the '564 Patent, then, Comcast intentionally encourages and aids at least service-providers and end-user subscribers to directly infringe the '564 Patent.

103.   Additional allegations regarding Comcast's knowledge of the '564 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

104.   Comcast's infringement of the '564 Patent is willful and deliberate, entitling Rovi to enhanced damages and attorneys' fees.

105.   Comcast's infringement of the '564 Patent is exceptional and entitles Rovi to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C.

---

[35]     *See X1 Cloud DVR FAQs*, XFINITY, https://www.xfinity.com/support/articles/x1-dvr-cloud-technology-general-faqs (last visited Apr. 18, 2019); *X1 Cloud DVR Overview*, XFINITY, https://www.xfinity.com/support/articles/x1-dvr-with-cloud-technology-available-features (last visited Apr. 18, 2019).

McKool Smith, P.C.

§ 285.

106.   Rovi has been damaged by Comcast's infringement of the '564 Patent and will continue to be damaged unless Comcast is enjoined by this Court. Rovi has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Rovi, and public interest is not disserved by an injunction.

107.   Rovi is entitled to recover from Comcast all damages that Rovi has sustained as a result of Comcast's infringement of the '564 Patent, including without limitation, lost profits and not less than a reasonable royalty.

## SECOND CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,779,445

108.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-107 of this Complaint.

109.   The '445 Patent is valid and enforceable under United States Patent Laws.

110.   Rovi Guides, Inc., owns, by assignment, all right, title, and interest in and to the '445 Patent, including the right to collect for past damages.

111.   A certified copy of the '445 Patent is attached as Exhibit C.

## The '445 Patent

112.   The '445 Patent describes, among other things, the recording of broadcast television programs on servers remote to users. The '445 Patent discloses selectively recording a subset of broadcast programs on a server remote to users based on retention criteria and providing users with access to programs recorded on the server during a retention period. The invention allows for the use of network-based equipment to provide recording functionality, centralized storage, and program access to multiple user equipment. The '445 Patent also discloses removing recorded broadcast programs from storage on the server after a retention period,

McKool Smith, P.C.

which allows for efficient use of centralized video recording.

## '445 Patent Allegations

113.   Comcast markets the infringing functionality as Restart and Instant on Demand.[36] Comcast provides the Xfinity System to subscribers, which includes the provision of broadcast programs selectively recorded on the storages of servers remote to X1 subscriber equipment (the '445 Accused Products). On information and belief after reasonable investigation, Comcast performs the methods claimed in the '445 Patent by selectively recording, storing, providing access to, and removing broadcast programs with servers remote from X1 subscriber equipment.

114.   Comcast has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1-11 and 15-24 of the '445 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by making, using, offering for sale/lease, leasing, distributing in the United States, and/or importing into the United States without authority or license, STBs, including without limitation, one or more of the Accused Products ('445 Accused Products) and associated software (including at least the Xfinity branded IPG and mobile applications) that are used to infringe one or more claims of the '445 Patent. On information and belief after reasonable investigation, each of the '445 Accused Products are designed to be and are used with each other and Comcast's servers to access and provision broadcast programs selectively recorded on the storages of servers remote to X1 subscriber equipment.

115.   Comcast is currently an active inducer of infringement of one or more claims of the '445 Patent under 35 U.S.C. § 271(b). On information and belief after reasonable investigation, one or more of the '445 Accused Products of Comcast

---

[36]      *See, e.g.*, *New This Month On X1: A More Intuitive and Navigable User Experience*, COMCAST (May 15, 2015), https://corporate.comcast.com/comcast-voices/new-this-month-on-x1-a-more-intuitive-and-navigable-user-experience (describing a feature that "allows users to quickly and easily restart a program from the beginning" after tuning to a channel).

McKOOL SMITH, P.C.

directly and/or indirectly infringe (by induced infringement) one or more claims of the '445 Patent, literally and/or under the doctrine of equivalents.

116.   Rovi provided Comcast notice of the '445 Patent by identifying the '445 Patent in a list of Rovi patents sent to Comcast in April 2015.

117.   This Complaint also serves as notice to Comcast of the '445 Patent and its infringement.

118.   Comcast intentionally encourages and aids at least service providers and end-user subscribers to directly infringe the '445 Patent.

119.   Comcast provides the Accused Products and instructions to Xfinity subscribers so that its subscribers will use the Accused Products in a directly infringing manner. Comcast markets the Xfinity System to subscribers by touting, for example, that the X1 Platform can "quickly and easily restart a program from the beginning" after tuning to a channel.[37] Comcast advertises that X1 subscribers can restart sporting matches from the beginning while the matches are "still in progress."[38]   Comcast provides instructions to its subscribers on how to use the functionality of the '445 Patent on its website as well.[39]

120.   For example, a claim chart applying independent claims 1 and 15 of the '445 Patent to the Accused Products (as defined herein, which include related hardware and software components) with a mobile application and/or Comcast X1 STB operating Comcast Xfinity X1 software can be found at Exhibit D. This chart is an exemplary chart representative of the infringing operation of all set-top box

---

[37]     *New This Month On X1: A More Intuitive and Navigable User Experience*, COMCAST (May 15, 2015), https://corporate.comcast.com/comcast-voices/new-this-month-on-x1-a-more-intuitive-and-navigable-user-experience (last visited Apr. 18, 2019).
[38]     *An Unparalleled World Cup Experience for Bicultural Fans*, COMCAST (Jun. 15, 2018), https://corporate.comcast.com/stories/comcast-to-offer-the-most-advanced-and-comprehensive-bicultural-viewing-experience-for-the-2018-fifa-world-cup (last visited Apr. 18, 2019).
[39]     *See New This Month On X1: A More Intuitive and Navigable User Experience*, COMCAST (May 15, 2015), https://corporate.comcast.com/comcast-voices/new-this-month-on-x1-a-more-intuitive-and-navigable-user-experience (last visited Apr. 18, 2019).

Accused Products, which operate the Comcast Xfinity X1 software in the same manner.

121. Comcast's subscribers directly infringe the '445 Patent by using the Accused Products in their intended manner. With full knowledge of the '445 Patent, Comcast induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement. On information and belief, Comcast specifically intends that its actions will result in infringement of the '445 Patent or has taken deliberate action to avoid learning of infringement.

122. With full knowledge of the '445 Patent, then, Comcast intentionally encourages and aids at least service-providers and end-user subscribers to directly infringe the '445 Patent.

123. Additional allegations regarding Comcast's knowledge of the '445 Patent will likely have evidentiary support after a reasonable opportunity for discovery.

124. Comcast's infringement of the '445 Patent is exceptional and entitles Rovi to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

125. Rovi has been damaged by Comcast's infringement of the '445 Patent and will continue to be damaged unless Comcast is enjoined by this Court. Rovi has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Rovi, and public interest is not disserved by an injunction.

126. Rovi is entitled to recover from Comcast all damages that Rovi has sustained as a result of Comcast's infringement of the '445 Patent, including without limitation, lost profits and not less than a reasonable royalty.

McKool Smith, P.C.

## THIRD CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,386,871

127. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-126 of this Complaint.

128. The '871 Patent is valid and enforceable under United States Patent Laws.

129. Rovi Guides, Inc., owns, by assignment, all right, title, and interest in and to the '871 Patent, including the right to collect for past damages.

130. A certified copy of the '871 Patent is attached as Exhibit E.

### The '871 Patent

131. The '871 Patent describes, among other things, methods for using an interactive television program guide "implemented at least partially on user television equipment" to receive, store, and display both program listings and real-time data. The '871 Patent discloses receiving programs listings data and real-time data with an interactive television program guide. The '871 Patent also discloses receiving the real-time data from a source of real-time data and storing the real-time data. This invention allows for advanced program guide features based on real-time data such as sports scores. Real-time data may be retrieved and displayed or provided as part of updated programs listings information.

### '871 Patent Allegations

132. Comcast markets the infringing functionality as X1 Applications.[40] On information and belief after reasonable investigation, Comcast performs the methods claimed in the '871 Patent by, for example, receiving, providing, and displaying program listing and real-time data with an IPG.

133. Comcast has infringed and is infringing, individually and/or jointly,

---

[40] *X1 Apps on Your TV*, Xfinity, https://www.xfinity.com/support/articles/dashboard-for-xfinity-tv-on-the-x1-platform (last visited Apr. 18, 2019).

either literally or under the doctrine of equivalents, at least claims 1-19, 21-29, 31-36, 38-43, 45-53, 55, and 56 of the '871 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by making, using, offering for sale/lease, leasing, distributing in the United States, and/or importing into the United States without authority or license, STBs, including without limitation, one or more of the Accused Products ('871 Accused Products) and associated software (including at least the Xfinity branded IPG and mobile applications) that are used to infringe one or more claims of the '871 Patent.

134.   Comcast is currently an active inducer of infringement of one or more claims of the '871Patent under 35 U.S.C. § 271(b). On information and belief after reasonable investigation, one or more of the '871 Accused Products of Comcast directly and/or indirectly infringe (by induced infringement) one or more claims of the '871 Patent, literally and/or under the doctrine of equivalents.

135.   Rovi provided Comcast notice of the '871 Patent by identifying the '871 Patent in a list of Rovi patents sent to Comcast in April 2015.

136.   This Complaint also serves as notice to Comcast of the '871 Patent and its infringement.

137.   Comcast intentionally encourages and aids at least service providers and end-user subscribers to directly infringe the '871 Patent.

138.   Comcast provides the Accused Products and instructions to Xfinity subscribers so that its subscribers will use the Accused Products in a directly infringing manner. Comcast markets the Xfinity System to subscribers by, for example, touting the X1 Sports App, which provides program listings and real-time data for sporting events.[41] Comcast markets the X1 Sports App and advertises the program listings and real-time data of the X1 Sports App for a range of programs

---

[41]   *See Access and Watch Games on the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-watch-games (last visited Apr. 18, 2019).

COMPLAINT FOR PATENT INFRINGEMENT

including college basketball,[42] NFL games,[43] NHL games,[44] MLB games,[45] NCAAF games,[46] and soccer games.[47]   Comcast also provides instructions to its subscribers on how to use the functionality of the '871 Patent on its website.[48]

139.   For example, a claim chart applying independent claims 1, 23, and 34 of the '871 Patent to the Accused Products (as defined herein, which include related hardware and software components) can be found at Exhibit F. This chart is an exemplary chart representative of the infringing operation of all set-top box Accused Products, which operate the Comcast Xfinity X1 software in the same manner.

140.   Comcast's subscribers directly infringe the '871 Patent by using the Accused Products in their intended manner. With full knowledge of the '871 Patent, Comcast induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement. On information and belief, Comcast specifically intends that its actions will result in infringement of the '871 Patent or has taken deliberate action to avoid learning of infringement.

141.   With full knowledge of the '871 Patent, then, Comcast intentionally

---

[42]   *College Basketball is Better with X1*, XFINITY DISCOVERY HUB, https://www.xfinity.com/hub/tv-video/college-basketball-championship-x1 (last visited Apr, 18 2019) (advertising that subscribers can use "specific voice commands, such as 'College Basketball Scores' to see live scores in the Sports App").

[43]   *Get NFL Extras on the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-nfl-extras (last visited Apr. 18, 2019).

[44]   *Get NHL Extras on the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-nhl-extras (last visited Apr. 18, 2019).

[45]   *Get MLB Extras on the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-mlb-extras (last visited Apr. 18, 2019).

[46]   *Get NCAAF Football Extras on the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-ncaa-football (last visited Apr. 18, 2019).

[47]   *Access Soccer Extras on the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-soccer-extras (last visited Apr. 18, 2019).

[48]   *See, e.g.*, *Access and Watch Games on the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-watch-games (last visited Apr. 18, 2019); *see also Add Your Favorite Teams to the X1 Sports App*, XFINITY, https://www.xfinity.com/support/articles/x1-sports-app-favorites (last visited Apr. 18, 2019).

McKool Smith, P.C.

encourages and aids at least service-providers and end-user subscribers to directly infringe the '871 Patent.

142.   Additional allegations regarding Comcast's knowledge of the '871 Patent will likely have evidentiary support after a reasonable opportunity for discovery.

143.   Comcast's infringement of the '871Patent is exceptional and entitles Rovi to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

144.   Rovi has been damaged by Comcast's infringement of the '871 Patent and will continue to be damaged unless Comcast is enjoined by this Court. Rovi has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Rovi, and public interest is not disserved by an injunction.

145.   Rovi is entitled to recover from Comcast all damages that Rovi has sustained as a result of Comcast's infringement of the '871 Patent, including without limitation, lost profits and not less than a reasonable royalty.

## FOURTH CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 8,156,528

146.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-145 of this Complaint.

147.   The '528 Patent is valid and enforceable under United States Patent Laws.

148.   Rovi Guides, Inc., owns, by assignment, all right, title, and interest in and to the '528 Patent, including the right to collect for past damages.

149.   A certified copy of the '528 Patent is attached as Exhibit G.

## The '528 Patent

150.   The '528 Patent describes, among other things, an interactive television

McKool Smith, P.C.

McKOOL SMITH, P.C.

system having both a personal video recorder compliant device (e.g., a device having an IPG that does not have its own recording functionality but is compatible with a personal video recorder device) and a personal video recorder device that has its own IPG where the devices work so that the user may use the IPGs seamlessly with the personal video recorder functionality. The '528 Patent discloses systems including a personal video recorder compliant device with a first interactive television program guide and personal video recorder extensions and a personal video recorder device with a second interactive television program guide. The '528 Patent also discloses that the first and second interactive television program guides are distinctly implemented but provide the same functions on the personal video recorder compliant device and the personal video recorder, respectively. The invention allows for an interactive television system in which users may use IPG features seamlessly on multiple devices with personal video recorder functionality.

### '528 Patent Allegations

151.   Comcast markets the infringing functionality as X1 AnyRoom DVR.[49] On information and belief after reasonable investigation, Comcast provides the Xfinity System to subscribers, which includes X1 DVRs and X1 Non-DVRs (the '528 Accused Products).[50]

152.   Comcast has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1-3, 6, 11-18, 20, 23-24, 26-27, 29-32, and 34-36  of the '528 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by making, using, offering for sale/lease, leasing, distributing in the United States, and/or importing into the United States without authority or license, STBs, including without limitation, one or more of the Accused

---

[49]     *X1 AnyRoom DVR – What it is and How it Works*, XFINITY,
https://www.xfinity.com/support/articles/x1-anyroom-dvr-overview (last visited Apr. 18, 2019).
[50]     *See X1 TV Box Comparison – DVR vs. Non-DVR*, XFINITY,
https://www.xfinity.com/support/articles/x1-hub-vs-companion-box (last visited Apr. 18, 2019).

Products ('528 Accused Products) and associated software (including at least the Xfinity branded IPG and mobile applications) that are used to infringe one or more claims of the '528 Patent. On information and belief after reasonable investigation, each of the '528 Accused Products are designed to be and are used with each other to support X1 AnyRoom DVR functionality.

153.   Comcast is currently an active inducer of infringement of one or more claims of the '528 Patent under 35 U.S.C. § 271(b). On information and belief after reasonable investigation, one or more of the '528 Accused Products of Comcast directly and/or indirectly infringe (by induced infringement) one or more claims of the '528 Patent, literally and/or under the doctrine of equivalents.

154.   Rovi provided Comcast notice of the '528 Patent by identifying the '528 Patent in a list of Rovi patents sent to Comcast in April 2015.

155.   This Complaint also serves as notice to Comcast of the '528 Patent and its infringement.

156.   Comcast intentionally encourages and aids at least service providers and end-user subscribers to directly infringe the '528 Patent.

157.   Comcast provides the Accused Products and instructions to Xfinity subscribers so that its subscribers will use the Accused Products in a directly infringing manner. Comcast markets the Xfinity System to subscribers as including both "X1 DVR TV Boxes" and "X1 Non-DVR TV Boxes," wherein the X1 Non-DVR TV Boxes "can schedule recordings and play back recorded content."[51] Comcast provides instructions to its subscribers on how to use the functionality of the '528 Patent on its website as well.[52]

---

[51]     *X1 TV Box Comparison – DVR vs. Non-DVR*, XFINITY, https://www.xfinity.com/support/articles/x1-hub-vs-companion-box (last visited Apr. 18, 2019).

[52]     *ANSWERED: Side by side Xfinity X1 TV Box Comparison – DVR vs. Non-DVR*, XFINITY COMMUNITY FORUM, https://forums.xfinity.com/t5/TV/ANSWERED-Side-by-side-Xfinity-X1-TV-Box-Comparison-DVR-vs/ta-p/2940260?advanced=false&collapse_discussion=true&q=non-dvr&search_type=thread (featuring instructions by "ComcastJessie") (last visited Apr. 18, 2019).

MCKOOL SMITH, P.C.

McKool Smith, P.C.

158.   For example, a claim chart applying independent claims 1, 17, 27, and 32 of the '528 Patent to the Accused Products (as defined herein, which include related hardware and software components) can be found at Exhibit H. This chart is an exemplary chart representative of the infringing operation of all set-top box Accused Products, which operate the Comcast Xfinity X1 software in the same manner.

159.   Comcast's subscribers directly infringe the '528 Patent by using the Accused Products in their intended manner. With full knowledge of the '528 Patent, Comcast induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement. On information and belief, Comcast specifically intends that its actions will result in infringement of the '528 Patent or has taken deliberate action to avoid learning of infringement.

160.   With full knowledge of the '528 Patent, then, Comcast intentionally encourages and aids at least service-providers and end-user subscribers to directly infringe the '528 Patent.

161.   Additional allegations regarding Comcast's knowledge of the '528 Patent will likely have evidentiary support after a reasonable opportunity for discovery.

162.   Comcast's infringement of the '528 Patent is exceptional and entitles Rovi to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

163.   Rovi has been damaged by Comcast's infringement of the '528 Patent and will continue to be damaged unless Comcast is enjoined by this Court. Rovi has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Rovi, and public interest is not disserved by an injunction.

164.   Rovi is entitled to recover from Comcast all damages that Rovi has

sustained as a result of Comcast's infringement of the '528 Patent, including without limitation, lost profits and not less than a reasonable royalty.

## FIFTH CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,301,900

165.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-165 of this Complaint.

166.   The '900 Patent is valid and enforceable under United States Patent Laws.

167.   Rovi Guides, Inc., owns, by assignment, all right, title, and interest in and to the '900 Patent, including the right to collect for past damages.

168.   A certified copy of the '900 Patent is attached as Exhibit I.

### The '900 Patent

169.   The '900 Patent describes, among other things, a multimedia system and methods for client use of the multimedia system. The methods for using the '900 Patent's multimedia system include such things as receiving communications from clients wishing to access a network, determining whether a network application is already active for the client, and, in response, either: (1) opening a network application for the client (if a network application is not already open for the client), or (2) acting on behalf of the client through and by the already active network application. Various protocols, methods, and systems are described for accomplishing these and other objects of the inventions claimed in the '900 Patent.

### '900 Patent Allegations

170.   Comcast markets the infringing functionality as X1 Applications.[53] On information and belief after reasonable investigation, Comcast provides the Xfinity System to subscribers, which includes access to X1 Applications (the '900 Accused

---

[53]   *X1 Apps on Your TV*, XFINITY, https://www.xfinity.com/support/articles/dashboard-for-xfinity-tv-on-the-x1-platform (last visited Apr. 18, 2019).

McKOOL SMITH, P.C.

1   Products).

2        171.   Comcast has infringed and is infringing, individually and/or jointly,

3   either literally or under the doctrine of equivalents, at least claims 1, 3, 4, 8, 10, 11,

4   17, 19, 23, 25, and 26 of the '900 Patent. in violation of 35 U.S.C. §§ 271, *et seq.*,

5   directly and/or indirectly, by making, using, offering for sale/lease, leasing,

6   distributing in the United States, and/or importing into the United States without

7   authority or license, STBs and broadband gateways, including without limitation,

8   one or more of the Accused Products ('900 Accused Products) and associated

9   software (including at least the Xfinity branded IPG and mobile applications) that

10  are used to infringe one or more claims of the '900 Patent. On information and belief

11  after reasonable investigation, each of the '900 Accused Products are designed to be

12  and are used with each other and Comcast's servers to access X1 Applications with

13  X1 subscriber equipment.

14       172.   Comcast is currently an active inducer of infringement of one or more

15  claims of the '900 Patent under 35 U.S.C. § 271(b). On information and belief after

16  reasonable investigation, one or more of the '900 Accused Products of Comcast

17  directly and/or indirectly infringe (by induced infringement) one or more claims of

18  the '900 Patent, literally and/or under the doctrine of equivalents.

19       173.   This Complaint also serves as notice to Comcast of the '900 Patent and

20  its infringement.

21       174.   Comcast intentionally encourages and aids at least service providers and

22  end-user subscribers to directly infringe the '900 Patent.

23       175.   Comcast provides the Accused Products and instructions to Xfinity

24  subscribers so that its subscribers will use the Accused Products in a directly

25  infringing manner. Comcast markets the Xfinity system as including applications

26  such as Cloud DVR, YouTube, Facebook, Instagram, Horoscopes, Weather,

27

28

McKool Smith, P.C.

Pandora, Stocks, Photos, Netflix, iHeartRadio, Tubi, and more.[54] Comcast advertises that the Xfinity System includes "primary" STBs that connect to Comcast's network to provide and buffer live TV for "companion" boxes in subscribers' homes.[55]

176.   For example, a claim chart applying independent claims 1, 8, 17, and 23 of the '900 Patent to the Accused Products (as defined herein, which include related hardware and software components) can be found at Exhibit J. This chart is an exemplary chart representative of the infringing operation of all set-top box Accused Products, which operate the Comcast Xfinity X1 software in the same manner.

177.   Comcast's subscribers directly infringe the '900 Patent by using the Accused Products in their intended manner. With full knowledge of the '900 Patent, Comcast induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement. On information and belief, Comcast specifically intends that its actions will result in infringement of the '900 Patent or has taken deliberate action to avoid learning of infringement.

178.   With full knowledge of the '900 Patent, then, Comcast intentionally encourages and aids at least service-providers and end-user subscribers to directly infringe the '900 Patent.

179.   Additional allegations regarding Comcast's knowledge of the '900 Patent will likely have evidentiary support after a reasonable opportunity for discovery.

180.   Comcast's infringement of the '900 Patent is exceptional and entitles Rovi to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C.

---

[54]    *X1 Apps on Your TV*, XFINITY, https://www.xfinity.com/support/articles/dashboard-for-xfinity-tv-on-the-x1-platform (last visited Apr. 18, 2019).

[55]    *X1 TV Box Comparison – DVR vs. Non-DVR*, XFINITY, https://www.xfinity.com/support/articles/x1-hub-vs-companion-box (last visited Apr. 18, 2019); *see Wireless TV Box FAQs*, XFINITY, https://www.xfinity.com/support/articles/wireless-tv-box-faqs (last visited Apr. 18, 2019) ("Wireless TV Boxes (Xi5 and Xi6) allow you to watch live TV via your in-home Xfinity network.").

§ 285.

181.   Rovi has been damaged by Comcast's infringement of the '900 Patent and will continue to be damaged unless Comcast is enjoined by this Court. Rovi has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Rovi, and public interest is not disserved by an injunction.

182.   Rovi is entitled to recover from Comcast all damages that Rovi has sustained as a result of Comcast's infringement of the '900 Patent, including without limitation, lost profits and not less than a reasonable royalty.

## SIXTH CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 7,200,855

183.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-183 of this Complaint.

184.   The '855 Patent is valid and enforceable under United States Patent Laws.

185.   Rovi Guides, Inc., owns, by assignment, all right, title, and interest in and to the '855 Patent, including the right to collect for past damages.

186.   A certified copy of the '855 Patent is attached as Exhibit K.

## The '855 Patent

187.   The '855 Patent describes, among other things, a multimedia system and methods for use of the multimedia system. The '855 Patent describes a multimedia system that includes clients, at least one multimedia server, and sources of multimedia content. Clients make use of the system to perform actions such as changing channels, adjusting the volume, performing trick play actions, and activating other features common to television and multimedia systems. The system is designed such that channel selection requests and commands are received and transmitted, in part, by a shared bus. Various aspects and methods related to the

McKool Smith, P.C.

multimedia system are described and claimed in the '855 Patent.

## '855 Patent Allegations

188.   Comcast markets the infringing functionality as part of the Xfinity X1 System.[56] On information and belief after reasonable investigation, Comcast provides the Xfinity System to subscribers, which includes access to different channels and sources of content (the '855 Accused Products).

189.   Comcast has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, all claims of the '855 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by making, using, offering for sale/lease, leasing, distributing in the United States, and/or importing into the United States without authority or license, STBs and broadband gateways, including without limitation, one or more of the Accused Products ('855 Accused Products) and associated software (including at least the Xfinity branded IPG and mobile applications) that are used to infringe one or more claims of the '855 Patent. On information and belief after reasonable investigation, each of the '855 Accused Products are designed to be and are used with each other and Comcast's servers to access X1 Applications with X1 subscriber equipment.

190.   Comcast is currently an active inducer of infringement of one or more claims of the '855 Patent under 35 U.S.C. § 271(b). On information and belief after reasonable investigation, one or more of the '855 Accused Products of Comcast directly and/or indirectly infringe (by induced infringement) one or more claims of the '855 Patent, literally and/or under the doctrine of equivalents.

191.   This Complaint also serves as notice to Comcast of the '855 Patent and its infringement.

---

[56]   *See Xfinity Channel Lineup and TV Guide by Comcast*, XFINITY, https://www.xfinity.com/learn/channel-lineup (last visited Apr. 18, 2019); *X1 Apps on Your TV*, XFINITY, https://www.xfinity.com/support/articles/dashboard-for-xfinity-tv-on-the-x1-platform (last visited Apr. 18, 2019).

McKOOL SMITH, P.C.

192.   Comcast intentionally encourages and aids at least service providers and end-user subscribers to directly infringe the '855 Patent.

193.   Comcast provides the Accused Products and instructions to Xfinity subscribers so that its subscribers will use the Accused Products in a directly infringing manner. Comcast markets the X1 Platform to subscribers and describes the many different channels and source of content available on the X1 Platform.[57] Comcast provides instructions to its subscribers on how to use the functionality of the '855 Patent on its website as well.[58]

194.   For example, a claim chart applying independent claims 1, 18, 28, 37, and 53 of the '855 Patent to the Accused Products (as defined herein, which include related hardware and software components) can be found at Exhibit L. This chart is an exemplary chart representative of the infringing operation of all set-top box Accused Products, which operate the Comcast Xfinity X1 software in the same manner.

195.   Comcast's subscribers directly infringe the '855 Patent by using the Accused Products in their intended manner. With full knowledge of the '855 Patent, Comcast induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement. On information and belief,

[57]    *See Xfinity Channel Lineup and TV Guide by Comcast*, XFINITY, https://www.xfinity.com/learn/channel-lineup (last visited Apr. 18, 2019); *Premium and Multiplex Channels Available from Comcast*, XFINITY, https://www.xfinity.com/support/articles/premium-channels (last visited Apr. 18, 2019); *Xfinity Stream*, XFINITY, https://www.xfinity.com/stream/ (last visited Apr. 18, 2019); *Verizon FiOS vs. Comcast: Compare Xfinity Internet & TV*, XFINITY, https://www.xfinity.com/compare/comcast-xfinity-vs-verizon-fios (last visited Apr. 18, 2019); *The Definitive Review of the Xfinity X1 from Comcast*, XFINITY, https://www.cabletv.com/blog/xfinity-x1-review/ (last visited Apr. 18, 2019); *Using Xfinity X1 to Stream the Best Movies & Shows on* Netflix, XFINITY, https://www.xfinity.com/hub/tv-video/netflix-on-x1 (last visited Apr. 18, 2019).

[58]    *See Xfinity X1 Remote Control Tips and Guide | Xfinity*, XFINITY, https://www.xfinity.com/tips/xfinity-x1-remote-tips-and-tricks (last visited Apr. 18, 2019); *Use the Xfinity TV Remote App to Change the Channel*, XFINITY, https://www.xfinity.com/support/articles/tune-tv-xfinity-remote (last visited Apr. 18, 2019); *Learn to Navigate Your X1 Guide*, XFINITY, https://www.xfinity.com/support/articles/x1-guide-how-to-navigate-in-the-guide (last visited Apr. 18, 2019).

COMPLAINT FOR PATENT INFRINGEMENT

Comcast specifically intends that its actions will result in infringement of the '855 Patent or has taken deliberate action to avoid learning of infringement.

196.   With full knowledge of the '855 Patent, then, Comcast intentionally encourages and aids at least service-providers and end-user subscribers to directly infringe the '855 Patent.

197.   Additional allegations regarding Comcast's knowledge of the '855 Patent will likely have evidentiary support after a reasonable opportunity for discovery.

198.   Comcast's infringement of the '855 Patent is exceptional and entitles Rovi to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

199.   Rovi has been damaged by Comcast's infringement of the '855 Patent and will continue to be damaged unless Comcast is enjoined by this Court. Rovi has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Rovi, and public interest is not disserved by an injunction.

200.   Rovi is entitled to recover from Comcast all damages that Rovi has sustained as a result of Comcast's infringement of the '855 Patent, including without limitation, lost profits and not less than a reasonable royalty.

## **PRAYER FOR RELIEF**

WHEREFORE, Rovi prays for a judgment in its favor and against Comcast and respectfully requests the following relief:

1.   A judgment declaring that Comcast has infringed one or more claims of each of the Asserted Patents in this litigation pursuant to 35 U.S.C. §§ 271(a) and/or 271(b);

201.   An injunction pursuant to 35 U.S.C. § 283 permanently enjoining Comcast, its officers, directors, attorneys, agents, servants, employees, parties in

privity with, and all persons in active concert or participation with, any of the foregoing, from continued acts of infringement, contributing to infringement, or inducing infringement of the Asserted Patents in this litigation;

202. A judgment requiring Comcast to make an accounting of damages resulting from Comcast's infringement of the Asserted Patents in this litigation;

203. A judgment awarding Rovi its damages resulting from Comcast's infringement of the Asserted Patents in this litigation, and increasing such damages pursuant to 35 U.S.C. § 284 because of the willful and deliberate nature of Comcast's conduct;

204. A judgment requiring Comcast to pay Rovi costs, expenses, and pre-judgment and post-judgment interest for Comcast's infringement of each of the Asserted Patents in this litigation;

205. A judgment finding that this is an exceptional case and awarding Rovi's attorneys' fees pursuant to 35 U.S.C. § 285; and

206. Such other relief as the Court deems just and proper.

DATED: April 22, 2019

Respectfully submitted,

MCKOOL SMITH, P.C.

BY _____

RODERICK G. DORMAN
ATTORNEYS FOR PLAINTIFF
ROVI GUIDES, INC.

50
COMPLAINT FOR PATENT INFRINGEMENT

**DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38-1, Plaintiff respectfully demands a jury trial of all issues triable to a jury.

DATED: April 22, 2019

Respectfully submitted,

MCKOOL SMITH, P.C.

BY _____

RODERICK G. DORMAN
ATTORNEYS FOR PLAINTIFF
ROVI GUIDES, INC.

MCKOOL SMITH, P.C.

COMPLAINT FOR PATENT INFRINGEMENT